Kate Ryan, as Administratrix, etc., of William Ryan, Deceased, Respondent, v. The Mayor, Aldermen and Commonalty of the City of New York, Appellant.

*Municipal corporation — aqueduct commissioners of New York, an independent body — request for the resignation of an employee, when equivalent to a discharge — the employee's right to salary depends upon a certificate of the commissioners.*

The employees of the aqueduct commissioners of the city of New York, a body created by chapter 490 of the Laws of 1883, an act to supply the city of New York with an increased supply of water, are not the employees of the city, but of an independent body.

Where the commissioners, because of charges preferred against an inspector of mason work to the effect that he was incompetent by reason of intoxication and insubordination, demand his resignation, such a demand is tantamount to a discharge, and its effect is not altered or impaired by the fact that the commissioners at a stated meeting, held about two years later, formally dismissed the inspector from their service.

*Semble,* that the compensation of an employee of the aqueduct commissioners can be paid by the comptroller of the city of New York only upon their certificate, and that a recovery against the city is not justified where it does not appear that the claimant ever received or asked for a certificate as to the work done by him.

Appeal by the defendant, The Mayor, Aldermen and Commonalty of the City of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 25th day of May, 1895, upon the verdict of a jury rendered after a trial at the New York Circuit, and also from an order entered in said clerk's office on the 24th day of June, 1895, denying the defendant's motion for a new trial made upon the minutes.

*James T. Malone,* for the appellant.

*L. E. Warren,* for the respondent.

Follett, J. :

This action was begun July 15, 1891, to recover the arrears of salary alleged to be due the plaintiff's intestate from the defendant. By chapter 490, Laws of 1883 (amended by chapters 337, Laws of

1886, 196, Laws of 1887, and 584, Laws of 1888), an act to supply the city of New York with an increased supply of water, it was provided that certain officers of the city and certain persons named in the act should be "aqueduct commissioners" and empowered to carry the provisions of the act into effect.

By the 30th section of the act it is provided: "The work and materials called for by said contract shall be done and furnished under the direction and supervision, and subject to the inspection of the said aqueduct commissioners, their engineers, supervisors and inspectors,    *    *    *."

By the 31st section it is provided: "The salaries and compensation of the persons employed, as provided for in this act, to prepare the necessary surveys, plans and estimates, and to direct, supervise and inspect the work required to be done under the provisions of this act,    *    *    *    shall be paid by the comptroller of the city of New York, on the certification of the said aqueduct commissioners or of such person or persons as may be designated by them."

By the 40th section it is provided: "Sec. 40. No person shall be appointed by the said aqueduct commissioners as inspector or superintendent, who shall not be certified by at least three members of the commission to be competent and fit for the duties of the position for which he is an applicant and experienced in the subject-matter of the employment."

These are the only provisions in the act relating to the employment and compensation of the employees of the aqueduct commissioners. June 8, 1887, the plaintiff's intestate, by a resolution of the aqueduct commissioners, was employed or appointed as an "inspector of masonry," and June 10, 1887, he filed an oath of office with the aqueduct commissioners, and July 21, 1887, he entered upon his duties. For July he was paid for eleven days' service. In August he was paid for twenty-eight days, in September for a month's service, and in October he was paid for service up to the twenty-fourth, at the rate of $120 per month. The plaintiff, for the purpose of establishing her cause of action, introduced a letter of the division engineer, dated October 25, 1887, addressed to the chief engineer, in which it was stated that on the previous morning, October 24, 1887, William Ryan reported for duty about ten A. M. considerably intoxicated; that he was reprimanded and told that he

# 472 RYAN v. MAYOR.

was to be suspended, and that Ryan replied that if he was going to do it he had better do it at once, as he wanted to go to the city for a week. It was also stated in this letter that Ryan was otherwise insubordinate, and that he had caused considerable trouble while on duty when under the influence of liquor. The letter further stated that he was of no use on the work. Upon the receipt of this letter, the chief engineer asked that the resignation of Ryan be demanded. At a meeting of the aqueduct commissioners, held October 26, 1887, a resolution was adopted directing the chief engineer to ask for the resignation of Ryan. Upon this resolution the chief engineer, on the 27th of October, 1887, directed the division engineer to require that "the resignation of Inspector William Ryan be demanded forthwith." On the next day the division engineer delivered to William Ryan a letter referring to the action of the commissioners on the twenty-sixth of October, which concluded as follows: "I hereby call upon you for your resignation forthwith." It does not appear that after October 24, 1887, William Ryan ever performed any service as an inspector of masonry, or that he ever offered to perform such service, but it does appear that on many occasions subsequent to the date mentioned he applied to be "reinstated" as an inspector of masonry, which was never complied with. Neither does it appear that William Ryan ever received or asked for a certificate for work done, as provided by the portion of section 31 above quoted. The employees of the aqueduct commissioners are not the employees of the city, but of an independent body.

December 19, 1889, the following letter was written and delivered to Ryan:

"NEW YORK, *Dec.* 19, 1889.

"WILLIAM RYAN, Esq., One Hundred and Tenth Street and Boulevard:

"DEAR SIR.—At a stated meeting of the aqueduct commissioners, held on the 18th instant, it appearing that your services would be no longer required as an inspector of masonry, you are dismissed from the service of said commissioners.

"Respectfully,

"JOHN C. SHEEHAN,

"*Secretary.*"

Upon this evidence the learned trial judge submitted to the jury the question whether the commissioners and Ryan understood that the action taken amounted to a discharge. The jury decided this question in favor of the plaintiff, and rendered a verdict for $4,126.20, which was based on the theory that Ryan was entitled to compensation at the rate of $120 per month from October 24, 1887, to December 19, 1889, the date of his formal discharge. Assuming, as we must, that Ryan was an " officer " (*Emmitt* v. *The Mayor*, 128 N. Y. 117; *Meyers* v. *The Mayor*, 69 Hun, 291), we are of the opinion that this verdict is contrary to the evidence. From the nature of the charge preferred against Ryan, that he was incompetent by reason of intoxication and insubordination, it must have been understood by him as well as by the commissioners that the demand for his resignation was tantamount to a discharge. From this time to the date of the formal discharge, which was evidently induced by certain decisions which had been made, Ryan performed no service for the commissioners, and, so far as it appears, he did not report at the work as ready and willing to serve in the capacity in which he had previously been employed. Under the act, inspectors of masonry do not seem to be entitled to any greater consideration than laborers, or any of the other employees of the commissioners. There is no period of service fixed by the statute, and their employment is for such time as the commissioners may deem wise. There was no conflict in the evidence, and we think the jury erred in the inference which it drew therefrom, and that the trial court erred in denying the defendant's motion for a new trial made on the minutes upon the ground that the verdict was contrary to the evidence.

The judgment and order are reversed, and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment and order reversed, and new trial granted, costs to appellant to abide event.